## JOHN HURLEY & another *vs.* ANN BROWN.

In a written contract to convey real estate, the words used to describe the estate agreed to be conveyed are presumed to relate to estate owned at the time of the contract by the party agreeing to make the conveyance; and if the agreement is to convey " a " house and lot of land on a certain street, and, in a suit in equity to compel specific performance thereof, it appears that there are several lots of land, with houses, on that street, oral evidence is admissible to apply this description to a particular house and lot of land so situated, and so owned.

BILL IN EQUITY for a decree to enforce specific performance of an agreement of the defendant and her husband, contained in the following memorandum signed by them, to convey to the plaintiffs, as her separate real estate, a house and lot of land on Amity street in Lynn, described in the bill by metes and bounds : " Lynn, April 14, 1866. $50. Received of John and Michael Hurley the sum of fifty dollars in part payment of a house and lot of land situated on Amity Street, Lynn, Mass. The full amount is $1700. This bargain to be closed inside of ten days from date hereof."

James Brown, the husband, who was made a party to the bill, died while the suit was pending.

The bill alleged payment by the plaintiffs of the fifty dollars named in the receipt, and also that, relying on the agreement therein contained, they proceeded to redeem the land from certain mortgages and claims for taxes, to which it was then subject.

The answer denied that the receipt was a sufficient memorandum in writing to take the case out of the statute of frauds, Gen. Sts. *c.* 105, § 1.

At the hearing, before *Hoar*, J., it was proved that the defendant was seised of the land described in the bill, as her separate estate ; that the receipt was executed by her and her husband on the day of its date, when she received fifty dollars from the plaintiffs ; that the plaintiffs paid the sums alleged in the bill on account of the mortgages and taxes ; and that they made

seasonable tender of the balance of the purchase money stip-
ulated in the receipt.

The plaintiffs also proved by parol evidence (subject to the
defendant's objection to its admissibility,) "that the defendant
owned no other real estate on Amity Street, and that the parties
had been in treaty for the purchase of the described premises;"
and the judge found as a fact that the piece of real estate re-
ferred to in the receipt was the same which was described in
the bill. But it appeared in evidence that there were other lots
of land with houses, situated on Amity Street.

The judge reported the case for the determination of the full
court.

*S. B. Ives, Jr., & S. Lincoln, Jr.,* for the plaintiffs.

*J. C. Perkins,* for the defendant.

FOSTER, J. This is a bill in equity for the specific perform-
ance of a contract made by a husband and wife to convey her
separate property.

The alleged agreement is contained in a receipt given for part
payment of the purchase money. This is no objection to its
validity. The form of the memorandum is immaterial, if its
contents adequately set forth the agreement. *Barry* v. *Combe,*
1 Pet. 640. *Evans* v. *Prothero,* 2 Macn. & Gord. 322. In this
case the paper was signed by both of the parties sought to be
charged, and the only objection made to it is, that the premises
to be conveyed are not sufficiently described. It is conceded
to be in legal effect a contract to convey "a house and lot of
land situated on Amity Street, Lynn, Mass." And the question
is, whether such a description is void for uncertainty.

The strength of the argument against its validity is, that no
particular house and lot are thereby identified; that the terms
would be satisfied by the conveyance of any house and lot on
that street; and that parties may enter into a binding agreement
to convey real estate which they do not own.

But this view leaves out of sight some important considera-
tions. Mrs. Brown, being a married woman, was incapable of
binding herself personally by a common contract. Her promise
could have no validity except so far as it related to her separate

property actually owned by her at the time. This circumstance is of weight in determining whether this agreement referred in definitely to any estate on Amity Street, or definitely to some one which the wife might make a valid contract to convey. It is true that an agreement may be made to sell an estate which the vendor does not own, and he may be liable in damages at law for failing to perform it. But specific performance in equity would not be decreed in favor of a vendor who at the time of the bargain was not the owner of the estate which was the subject thereof, or had not the power to become the owner by legal or equitable proceedings. *Tendring* v. *London*, 3 Eq. Cas. Ab. 680. *Mortlock* v. *Buller*, 10 Ves. 315. *Pipkin* v. *James*, 1 Humph. 325.

We think that the presumption is strong that a description which actually corresponds with an estate owned by the contracting party is intended to apply to that particular estate, although couched in such general terms as to agree equally well with another estate which he does not own. This would be apparent if the memorandum related to personal property. For example, if a man made a written bargain to sell " a horse," and he then owned one horse only, we suppose that no one would doubt that the contract was to be construed to relate to that particular animal. This court has decreed specific performance of an agreement to convey " fifty shares of Providence & Worcester Railroad stock," a description which does not identify any specific shares. *Todd* v. *Taft*, 7 Allen, 371. No more particular description is necessary under the statute of frauds, in a contract for the sale of real estate, than in one relating to personal property. In each, to constitute a bargain and sale, or a contract which will be specifically enforced in equity, the subject matter thereof must be identified.

In a deed, the words of description are, of course, intended to relate to an estate owned by the grantor. And, in our opinion, this is also the presumption in construing a contract for a future conveyance. If the party who enters into the agreement in fact owns a parcel answering to the description, and only one such, that must be regarded as the one to which the description refers.

With the aid of this presumption, the words " *a* house and lot " on a street where the party who uses the language owns only one estate, are as definite and precise as the words " *my* house and lot " would be; a description the sufficiency of which has been placed beyond all doubt by very numerous authorities. *Bird* v. *Richardson,* 8 Pick. 252. *Phelps* v. *Sheldon,* 13 Pick. 50. *Atwood* v. *Cobb,* 16 Pick. 227. In both cases the same extrinsic evidence must be resorted to, by the aid of which all uncertainty is removed. Where the words used are " my estate " in a particular locality, oral evidence is necessary to show what estate the vendor did own. A latent ambiguity always exists where the party owns two parcels, to each of which the description used is equally applicable.

In the present case the writing does not show that there is more than one house and lot on Amity Street. This fact was disclosed by the oral evidence at the trial; and the familiar rule would seem to apply, that parol evidence is admissible to explain and remove a latent ambiguity. If there had been only one house and lot on the street, there would have been no indefiniteness in the description. The supposed uncertainty having been created by parol, evidence of the same character may be resorted to for its removal. But, without relying much upon this consideration, we regard the fair construction of the words used to be, that they relate to a house and lot owned, at the time the memorandum was signed, by the parties who subscribed it. Thus interpreted, they are sufficiently certain, and the oral evidence is needed only to apply the description. This must be done by extrinsic evidence in every contract or conveyance, however minutely the boundaries of the estate may be set forth. The maxim, *id certum est quod certum reddi potest,* is the established rule of construction in suits for specific performance. The contract in the present case seems to us fairly within its application.

*Farwell* v. *Mather,* 10 Allen, 324, upon which the learned counsel for the defendant relies, was an action at law for damages, in which the insuperable difficulty was, that, by the terms of the memorandum, the nature of the estate was left uncertain.

It was in fact a leasehold interest, but the words of the written contract were ambiguous, and might as well describe an estate in fee. An agreement to sell a house imports an agreement to convey the title thereof in fee. *Hughes* v. *Parker*, 8 M. & W. 244. The nature of the title to be conveyed in the present case is therefore free from doubt, and the description of the property is the only matter in controversy.

*Murdock* v. *Anderson*, 4 Jones Eq. 77, is certainly not easy to reconcile with the conclusion we adopt. But its authority is, in our opinion, outweighed by the considerations already stated, in further illustration of which one or two additional cases may be referred to. " Philo Baldwin's right in Donald Baldwin's estate" has been held a sufficient description to satisfy the statute of frauds. *Nichols* v. *Johnson*, 10 Conn. 192. " Mr. Ogilvie's house " was deemed definite enough, in a suit for specific performance. *Ogilvie* v. *Foljambe*, 3 Meriv. 53. And the following words in a letter were held to warrant a decree against the writer : " I have sold the house, &c., in Newport," (then follow the price and terms of payment,) " the money to be paid as soon as the deeds can be had from Mr. Dease." *Owen* v. *Thomas*, 3 Myl. & K. 353. See Fry on Specific Performance, §§ 209, 212.

Our conclusion is, that the plaintiffs are entitled to a decree for specific performance. Unless the parties agree as to the terms of the deed and as to the payment of the purchase money, the case must be referred to a master to report the form of the conveyance and to ascertain the sum due on account of the purchase money. If any claim is made that interest should be charged upon the portion unpaid, he will also report all the facts relative thereto.