# PACKARD v. PUTNAM.

*Chancery—Resulting trust—Written acknowledgment of trust.*

By an ante-nuptial contract, it was agreed that the wife, after the marriage was solemnized, should advance to her husband money for the payment of his debts, and should be secured in some way by the husband's real estate, which was of about the same value as the amount to be advanced. The wife having advanced the money, and the husband's debts having been substantially paid, she was desirous of getting her security; and it was finally arranged that the land should be conveyed to her by the husband, in the usual form, through the intervention of a trustee, to whom the land was to be conveyed, and who was to convey immediately to her. The land was accordingly conveyed by the husband to the trustee in pursuance of the arrangement. It was, however, before the conveyancing was completed, arranged that the land should be sold on her account, and that the trustee should convey to the purchaser. *Held*, that a trust resulted in favor of the wife.

While the title remained in the trustee, the wife becoming anxious wrote to him stating how uneasy she was feeling about her property, and that she wanted a deed of the "Enfield property:" to which he answered in substance, referring to her letter and to what she had said about her property, telling her not to worry about it, and promising to convey it at her pleasure. *Held*, that this letter was a sufficient declaration of trust within the statute of frauds.

The letter was written in the presence of the trustee, and signed for him in his presence, and by his direction. *Held*, that this was a sufficient signing by the trustee.

The letter to which this was an answer was not produced, but, its absence being satisfactorily accounted for, parol evidence was received of its contents.

Parol evidence was also received for the purpose of identifying the land described in the wife's letter to the trustee as her "Enfield property."

The evidence of the plaintiff, who was the wife, was offered in the cause; but the defendant being an administrator, and all the facts contained in her deposition being amply proved by other testimony—*Held*, that it was not necessary to receive her testimony in order to prevent injustice, under Gen. Stats., ch. 209, sec. 17.

GRAFTON COUNTY.

BILL IN EQUITY, in which Sarah A. Packard, wife of Sylvanus W. Packard, complains against said Sylvanus, Amie Putnam, widow of

the late Amos Putnam, Willie Putnam, and David Putnam, minor children and heirs of said Putnam, and David Eaton, administrator upon the estate of Putnam, situate in the state of New Hampshire.

The bill stated, in substance, that said Sarah was married to said Sylvanus May 29, 1866; that by an ante-nuptial contract between her and Sylvanus, previous to their marriage, it was agreed that said Sarah should furnish said Sylvanus with money sufficient to pay off all his indebtedness, and that the money thus furnished should be considered as a lien upon said Sylvanus's real estate; and that said Sylvanus should secure said 'Sarah by conveying to her his real estate, in some way or manner, as they might be advised, by counsel learned in the law, it could be legally and properly done. Among the different ways proposed, for refunding the money thus advanced, was one to sell the place, while said Sylvanus had the title, and with the money obtained from the sale to repay said Sarah for the moneys she might advance; but if this was not done, then said Sarah was to be secured, or paid, for the moneys advanced, by such a conveyance of said Sylvanus's real estate as they might be advised was safe, legal, and proper. That in pursuance of said contract, said Sarah furnished said Sylvanus divers sums of money, amounting to sixteen hundred dollars, or over, for the payment of the debts of said Sylvanus: and said Sylvanus's debts were all paid by the money thus furnished, with the exception of a small debt of ten dollars, for which said Sarah is now responsible. Previous to the marriage, in accordance with the contract, said Sarah furnished said Sylvanus with four hundred dollars, which was paid in discharge of said Sylvanus's debts, and at divers times, since said marriage, has paid divers debts of said Sylvanus, amounting in the whole, as above stated, to sixteen hundred dollars. The sums which said Sarah so furnished were more than the value of his real estate.

In the spring of 1867, in order to raise the money to repay said Sarah, said Sylvanus advertised his real estate in Enfield to be sold at public auction, and put the same up to be sold to the highest bidder; but, as no satisfactory bid for the estate was received, the estate was withdrawn, and not sold.

After this, the real estate was offered at private sale, in order to raise funds to repay the money furnished by said Sarah, but no opportunity offering for its sale, and the said Sarah feeling uneasy in regard to her security, and having then paid out and furnished more money than the real estate of said Sylvanus was worth, requested said Sylvanus to secure her, as he had agreed to, by giving her a deed of his real estate. In pursuance of this request, said Sylvanus, after a consultation with the friends and family of said Sarah, and taking the advice of legal counsel, proposed to convey by a deed of warranty, in the usual form, his real estate in said Enfield to some honest and reliable person, who would either hold the estate in trust, and dispose of the same, and from the moneys obtained from the sale thereof, if sufficient therefor, repay said Sarah for the moneys advanced by her for the payment of

the debts of said Sylvanus, or immediately convey the same to said Sarah. In pursuance of this understanding, the said Sylvanus, Sarah, and one Amos Putnam, a brother-in-law of said Sarah, went to Lewis B. Morris, Esq., with the intention of having a deed, in the usual form, made by said Sylvanus and said Sarah, to said Putnam, of the real estate in said Enfield, and that then the said Putnam should immediately convey the same estate to said Sarah. A conveyance of said real estate was made by said Morris in the usual form, running from said Sylvanus and said Sarah to said Amos Putnam ; but, owing to some misapprehension on the part of Mr. Morris, thinking possibly it might look like a fraudulent transaction if the intention of the parties was then and there carried into effect, and expose the parties to possible litigation, he advised said parties that it would be better not to have a conveyance simultaneously made by Putnam to said Sarah, as they wished and had intended, but to have it done at some time thereafter. At this time there were other ways suggested for the security of said Sarah, but it was finally decided that in a short time the original intention should be carried out, and that Putnam should convey the Enfield estate to said Sarah ; and such was the understanding of all parties.

In a short time, after the conveyance to Putnam, the said real estate, some time in the fall of 1868, was again offered for sale at auction, for the purpose of paying said Sarah, and said Putnam was then and there present at the auction for the purpose of making the conveyance of said property to any one who might purchase, and was at all times ready to convey to said Sarah ; and the only reason it was not done was, that it was the expectation of all parties that the property would soon be sold, and that a deed from Putnam to the purchaser would save the expense of making a deed from Putnam to said Sarah. At the time of the said last mentioned auction said Putnam gave the deed of said Enfield property to said Sarah, saying to her it was hers, and that at any time he would sign a deed transferring to her the title of the Enfield property ; and after giving her the deed, which she has ever since had in her possession, said to her,—" It is now all right, and if I should die to-night, Amie [his wife] and the children know that the property is yours, and it will make no difference."

At the time of the conveyance to said Putnam, said Silvanus and said Sarah were living upon the said real estate, and remained in the the open visible possession of said estate until after the death of said Putnam, and the taxes on said place have been paid by said Sarah, and the property is now taxed to her, said Sarah.

Said Putnam died at Thetford, on March 14, 1869, leaving a widow and two minor children, and leaving estate in Vermont, which is now in course of administration ; but said estate will not pay the debts due by said Putnam at the time of his death. Said Putnam left no estate in New Hampshire, and none stands in his name except the estate hereinafter mentioned and described in an abstract of a deed from said Sylvanus and wife to said Amos, dated November 20, 1867, the title to which, on account of the conveyances not being completed

on said November 20, 1867, in accordance with the original intention of the parties, accidentally stands in the name of said Amos, but in truth and in fact, in justice and equity, belongs to said Sarah. That the complainant, when she signed said deed of November 20, 1867, signed the same as a part execution of conveyances, which were intended, when completed, to vest said estate, described in said deed, in the complainant, and her signature was intended only as a mere form—a means or instrument by which the whole title to the estate would be vested in herself; and the complainant states she is informed that, instead of getting any security upon said estate for the moneys advanced by her to pay the debts of said Sylvanus, she has divested herself of whatever rights she had by marriage thereto, to wit, dower and homestead; and that she is utterly without remedy, except in a court of equity.

The material parts of the deed of November 20, 1867, are as follows, to wit,—Sylvanus W. Packard, and Sarah A. Packard, his wife, for the consideration of fifteen hundred dollars, by a deed of warranty in common form, with a release of homestead and dower, convey to Amos Putnam, of Norwich, Vermont, " three undivided fourth parts of the following described premises, situated in the town of Enfield in said county of Grafton, bounded and described as follows, to wit, beginning at a stake and stone standing on the east side of the N. H. turnpike road, so called, thence south on said road to land formerly owned by Robert Cochran, and now occupied by Benjamin Hartford, thence easterly along said Cochran's land to George Pond brook, thence westerly along said brook to the first mentioned bound;—also, the right of flowage on the east side of said brook; said privilege being the right to raise the water to a level with an iron pin in a large rock under the barn on said premises, hereby conveying, and meaning to convey, three undivided fourth parts of all the rights and privileges conveyed to me by Joseph Baker and wife, and others, by deed, dated September 1, 1863, and recorded in Grafton Registry, lib. 274, fol. 572."

The complainant states that there are divers creditors of said Putnam represented by the administrator in this state, who, though well knowing that said Putnam had no estate in New Hampshire, and no means to purchase any, are unjustly and inequitably trying to satisfy their claims against the estate of said Putnam out of the estate in New Hampshire, which accidentally stands in his name.

The complainant prayed the court to appoint a guardian *ad litem* for the minor children of said Putnam, to wit, said Willie Putnam and David Putnam. The complainant further prayed the court to enjoin said Sylvanus, Amie Putnam, Willie Putnam, David Putnam, David Eaton, administrator as aforesaid, and all and singular, the creditors of said Amos Putnam, and all other persons, their agents, attorneys, aiders, and abettors, from setting up or making any claim to or upon said estate in New Hampshire, now standing in the name of said Amos Putnam; and that said Amie Putnam, Willie Putnam, David Putnam, and David Eaton, administrator, might be decreed to execute deeds, or

releases, in proper form, to your complainant, of all claim, right, title, and interest in and to said estate in said Enfield, heretofore described in the deed of November 20, 1867, from said Sylvanus and wife to said Amos Putnam, and for such other and further relief as may be just.

All the defendants were defaulted excepting Eaton, the administrator, who answered, and in his answer stated substantially that he was ignorant of most of the material allegations in the bill, and therefore denied them ; setting forth that he was the administrator of Amos Putnam's estate, and that he represented certain creditors, who had given credit to said Putnam on the strength of his ownership of the property in dispute, the legal title being in him, and the deed having been duly recorded.

This case was pending in the late supreme judicial court, and it had never been removed to the circuit court.

*Duncan*, with whom was *H. Bingham*, for the plaintiff.

*Felton*, for the defendant.

CUSHING, C. J.   The defendants, excepting Eaton, have been defaulted in the suit; guardians for the infant defendants have been appointed, and those guardians do not make answer.

David Eaton, who has taken letters of administration in the county of Grafton on the estate of Amos Putnam, appears and makes defence on behalf of four persons who allege that they are creditors of Amos Putnam, and who desire to satisfy their debts out of the real estate in dispute, which, they say, is the only property belonging to the estate of said Amos in New Hampshire ; and they also say that said Putnam's estate in Vermont is insolvent.   Eaton professes ignorance of the material allegations in the bill, and therefore denies them ; and what we have to determine is, whether the plaintiff is entitled to the relief she claims against the administrator representing these creditors.

Several objections have been taken to certain portions of the evidence, which it may be well to dispose of in the first instance.

The testimony of the plaintiff is objected to on the ground that the defendant is an administrator, and therefore the opposing party cannot be a witness.  ·This being true, under the statute, the objection would be decisive, unless the court could see that it was necessary for the plaintiff to testify in order to prevent injustice.   Gen. Stats., ch. 209, secs. 16, 17.   I think the provisions in section 17 cannot apply in this case, because the material facts testified to by the plaintiff are all abundantly made out by other witnesses, and contradicted by nobody. I hold, therefore, that it is not necessary for her to testify in order to prevent injustice, and, therefore, that her deposition is inadmissible.

The testimony of the plaintiff's husband is objected to, because of that relation.   As the examination of the husband does not lead to any violation of marital confidence, his testimony is admissible under section 22 of the same chapter.

It should be observed, that this suit relates to the plaintiff's separate property, which she holds independent of her husband to her sole and separate use, and in regard to which she can, by our law, sue alone; and that her husband is not a party plaintiff. As a party defendant, I see no reason why he cannot testify, as the statute—ch. 209, sec. 16— only excludes a party when the adverse party is an administrator or executor, &c. In this case, Packard, being a defendant, the administrator is not an adverse party. *Clements* v. *Marston,* 52 N. H. 31.

Considerable portions of the testimony are objected to as oral proof of a contract which could only be proved by writing. The plaintiff's evidence, however, tends to show not only an express trust, but also a resulting trust ; and all the evidence of this kind objected to is admissible for the purpose of making out all the circumstances by which the resulting trust is created. Other testimony is objected to as hearsay. A part of this testimony so objected to is admissible as evidence of the negotiations out of which the facts arose from which the trust is claimed to have resulted. Other portions are admissible as the statements of the intestate, Amos Putnam, which would be admissible if he were a party, and, of course, are admissible against his representative. Other portions are statements of the creditors, who are making this defence through the administrator, and, therefore, admissible as admissions of the parties in interest, and also as tending to contradict their depositions. Other hearsay testimony objected to was admissible as being in contradiction of the statements of other witnesses testifying in the case.

There was considerable testimony tending to show the amount of Amos Putnam's (the intestate's) property. This, I think, was evidence which ought to be considered, as tending to show the probability, or improbability, of the intestate's having purchased and paid for an estate to the amount of fifteen hundred dollars, as the defence alleged he had done ; and also as tending to show the probability, or improbability, of his being able to gain credit for small sums independently of his supposed ownership of the Enfield property. Evidence also of the intestate's circumstances, as to credit amongst his neighbors, was admissible for the same reason last mentioned.

The evidence offered, tending to show that the intestate was an honest and reliable man and a good neighbor, was inadmissible on general principles. His reputation has not been attacked, and need not be defended.

The evidence tending to show that people in general, in Thetford and its neighborhood, did not believe that the intestate owned the Enfield property, would not have been admissible, were it not for the evidence of Nathan Davis, H. Dodge, and Samuel M. Ladd, who testified to the intestate's pretences to be the owner of the Enfield property, but did not connect it with the creditors, otherwise than as a matter of reputation. The evidence alluded to might be considered as rebutting that, but being of doubtful admissibility has not been considered.

I believe I have indicated the objections which were made by the

defendant, and, in considering the testimony, have been governed by the results above indicated.

The position is taken by the defendant that this transaction between the plaintiff and her husband was designed as a fraud upon the creditors of her husband. If this were so, it would not benefit this defendant. If it were true that the transaction was void as against the husband's creditors, it would not make the defendant's circumstances any better, but, on the contrary, might be entirely fatal to their interests. If it were true that the creditors of Packard might avoid this conveyance, still as between Mr. and Mrs. Packard it would be entirely good, and no one could impeach it excepting creditors, or purchasers from Packard without notice. The evidence shows satisfactorily to me that the money paid by the plaintiff, as the consideration for her husband's conveyance, was mostly used for the purpose of paying his debts, and that at the time of the conveyance his debts were substantially paid. As it appears that the deed was duly recorded, there could be no such purchasers.

Proceeding, then, to consider the evidence, I think it is clearly made out that the plaintiff being about to be married, and so to relinquish her pension, her intended husband, by way of recompense for that loss, conveyed to her by deed an undivided fourth part of his Enfield property, understood to be free from incumbrance, and worth about five hundred dollars. I think it is also clearly proved that the plaintiff advanced to her husband, from her own separate estate, and which by law remained her separate estate after the marriage, a sum amounting to nearly or quite sixteen hundred dollars, which was used by the husband in paying off substantially all his debts and improving his business ; and that it was understood and agreed that in some legal way she should get repaid for this, or get security for it out of the remaining three fourths of the Enfield farm. Various attempts were made to sell or exchange the property, and it was always understood, whenever such negotiations were had, that the property received in exchange was to be conveyed to the plaintiff. The three undivided fourth parts of the Enfield property were not considered worth over fifteen hundred dollars, and the plaintiff appears to have advanced as much as that, or more, to her husband. There is no evidence of any intention or expectation that the husband should retain any interest in the land so conveyed to the plaintiff; but the conveyance was simply to inure as a payment of the debt. It is equally evident that if the property could have been sold instead of being exchanged, the proceeds would have been paid to her, and there was no expectation that enough could be obtained to do more than pay the debt.

All these attempts at selling or exchanging having failed, it was finally agreed that the Enfield property should be conveyed to her through the intervention of a third party, as is usual in such cases. When they went to the office of Mr. Morris, it was undoubtedly their intention to complete the transaction, and that the property should be conveyed to the plaintiff without any reservation, and received by her

in payment of the debt. If there was any intention that she should pay herself out of the property, and pay any balance over to her husband, nothing was said about it, and there was certainly no reason to suppose that she could ever realize enough to repay her advances.

Overpowered by the objections of their counsel, which appear to me to have been entirely without foundation, the plan was so far changed that the conveyance by Putnam to the plaintiff was deferred, the property having been conveyed to Putnam by the husband, and it being then understood that Putnam should sell the property for Mrs. Packard, as her agent, and failing that, should convey to her. The letter which is appended to Amie Putnam's deposition, and which, from that deposition, appears to have been written by her and signed by her, in his presence and by his direction, furnishes written evidence that he so understood it.

To make the transaction complete, the plaintiff relinquished her right of homestead and dower,—rights which were then inchoate, and not the objects of separate sale and conveyance. That act on the plaintiff's part was merely subsidiary to her husband's conveyance, and adapted to give complete effect to it.

It may be remarked, that in regard to this the testimony is all one way, substantially. I am not aware that any part of it is contradicted by any evidence.

What was the effect of this transaction ? The property had been conveyed by Sylvanus W. Packard to Amos Putnam, and the conveyance had been paid for by the money of the plaintiff. Here are all the elements of a resulting trust; and I think that as soon as the deed was executed and delivered the property became as effectually the plaintiff's property as though Amos Putnam had immediately conveyed it to her. That was the effect of the transaction; and it is not less a resulting trust because Putnam undertook to do just what he would have been bound to do without such undertaking. *Hall* v. *Congdon* (Coös), decided at this term, *post*, and authorities.

The conclusion seems unavoidable that here was a resulting trust, and that the property became the plaintiff's property as soon as the conveyance to Putnam was complete, and that the debt from the husband to the wife was discharged. *Scoby* v. *Blanchard*, 3 N. H. 170 ; *Pritchard* v. *Brown*, 4 N. H. 397 ; *Page* v. *Page*, 8 N. H. 187 ; Perry on Trusts, sec. 126, and cases cited in note 1.

There is, however, another view which may be taken of this matter. Mrs. Putnam, in her deposition taken May 16, 1874, identifies a letter, written, as she says, by herself, and signed with her husband's name, in his presence and by his direction, and in answer to a letter received from Mrs. Packard, in which she states how uneasy she was feeling about her property, and that she wanted a deed of the Enfield property, and wanted Mr. Putnam to go down and deed it to her. As Mrs. Putnam satisfactorily accounts for the absence of Mrs. Packard's letter, this parol evidence of its contents is admissible, and may be read in connection with the letter written in answer, which answer having been

signed by her in his name, in his presence and by his direction, is a memorandum in writing, signed by the party sought to be charged, sufficient to answer the requirements of the statute of frauds. This memorandum refers to Mrs. Packard's letter, and to what she has said about her property,—tells her not to worry about it, distinctly recognizes that the property is hers, and promises to convey it at her pleasure.

Is this memorandum sufficiently certain in its terms to answer the statute?

It is always admissible to show by oral testimony the application of the descriptive terms, for the purpose of identifying the property intended to be described. In the case of *Moore* v. *Kidder*, 55 N. H. 488, it was held that a valid attachment might be made by the general terms of all the debtor's interest in real estate in town, and that parol proof might be offered to show the precise property which the party owned at the time of the attachment. In the case of *Hunt* v. *Haven*, 56 N. H. 87, the property was described in similar general terms, and no objection was made on the ground of uncertainty, although it took more than twenty years' litigation to make it certain by oral testimony. Notwithstanding the difficulty of establishing the certainty by oral testimony in that case, and its extreme proximity to the dividing line between the certain and the uncertain, still I think it lay fairly on the side of the certain. In *Meade* v. *Parker*, 115 Mass. 413 (15 Am. R. 110), it was held that a memorandum made in Boston, to sell "a house on Church street," was sufficient under the statute of frauds, and that oral evidence might be given to identify the property as a house on Church street in Somerville. WELLS, J., *arguendo*, refers to *Hurley* v. *Brown*, 98 Mass. 545, in which the terms were "a house and lot of land situated on Amity street," and goes on to say,—" In the present case the writing bears date at Boston,—which might indicate that the property is in Boston. But that is an inference of fact not conclusive. If it appeared that there was no Church street in Boston, or that the defendant had no house there, but did own one upon Church street in Somerville, the identification of that as the subject of the negotiation and agreement might be effected by parol evidence, upon the same principle and by the same rule as was applied in *Hurley* v. *Brown*. It is not a question of the sufficiency of the writing, under the statute of frauds, so much as it is of the right to resort to parol evidence in aid of the writing, where an ambiguity exists in respect to the property intended to be sold, or to which the contract relates. The most specific and precise description of the property intended requires some parol proof to complete its identification. A more general description requires more. When all the circumstances of possession, ownership, situation of the parties, and of their relation to each other and to the property, as they were when the negotiations took place and the writings were made, are disclosed, if the meaning and application of the writing, read in the light of those circumstances, are certain and plain, the parties will be bound by it as a sufficient written contract or memorandum of their agreement."

The present case comes entirely within the doctrine enunciated in the above extract. The memorandum in question distinctly admits, taken in connection with the plaintiff's letter, that the property was hers, was in Enfield, and that the title stood in the name of Putnam, and promises to convey it to Mrs. Packard on request. It is apparent, both from the bill and answer, that the intestate, at the time of his decease, held the title to no other real estate in Enfield; and this fact is sufficient to identify the property mentioned in the memorandum. If it were necessary that a consideration should appear for the agreement, the fact admitted in the memorandum, that the property belonged to the plaintiff, would perhaps answer that requirement. If it were necessary for the purposes of this case, there would be no difficulty in holding this a sufficient declaration of trusts, under the statute of frauds, on which to found a decree for an execution performance.

The position is taken by the defence that there is no equity in this bill, because the plaintiff might have had her remedy by commencing a suit against her husband, and attaching this Enfield property. If that were so, although the question need not now be decided, there was surely no objection in law to the course which was taken. It was quite according to usage and law for Mr. Packard to convey this property to his wife through the intervention of a trustee; and having undertaken to do so, and the intention being frustrated by the unexpected death of the trustee, she could not now attach the land as the property of her husband. If considered as a proceeding for the purpose of transferring the legal title from the representatives of Mr. Putnam to herself, the case is one eminently of equitable jurisdiction.

The defendant also takes the somewhat contradictory position that by our law the plaintiff could not make any contract directly with her husband, and that therefore this contract ought to be considered of no effect. The husband has fulfilled his promise by his conveyance to Amos Putnam, and the debt to his wife, certainly equitable and just, is discharged; and the question is, not to enforce any contract against him, but to draw out of the heirs of Amos Putnam the property which clearly belongs to the plaintiff.

Finally, the position is taken by the defence in argument, and attempted to be supported by evidence, that Amos Putnam, having the legal title to the Enfield property in himself, represented himself to be the actual owner of it, and thereby induced those creditors, who are represented here by the administrator, to give him a credit which they would not otherwise have given. And it is said that the plaintiff, having thus by her misplaced confidence enabled her trustee to defraud these creditors, ought now to be estopped to deny the title which she had furnished him with the means of claiming.

Having examined with care and attention the evidence on this point, I am obliged to say that I do not consider the fact to have been established. Mr. Putnam had always lived in the vicinity of Thetford, and in the neighborhood of these creditors. He had been so situated that his actual means and resources must have been pretty well known in

Thetford and its vicinity. The assertion, if made by him, that he purchased in Enfield property to the value of fifteen hundred dollars, and paid the purchase-money without encumbering the property, must have been, I think, received with incredulity, especially at the very time when he was purchasing a farm to live upon in Thetford. So, when he was negotiating at Post Mills for a water privilege, to be paid for with the proceeds of the Enfield property, at the very time when he had bought a farm and moved on to it in Thetford, such a proceeding must have excited inquiry and surprise, if it had not been understood that he was acting for some one else. Add to this the fact that the Packards continued to occupy the farm until after Putnam's death, and the claim that he obtained a credit on the strength of his ownership of this property appears to have very little foundation. The principal witnesses by whom the alleged fact is proved are the parties in interest, and their testimony, which in itself is not very credible to me, is weakened by the direct contradiction of Mrs. Amie Putnam and other witnesses.

The evidence also tends to show, that although Mr. Putnam's resources were not large, and quite inadequate to the purchase of so much real estate without encumbering it, still he was in good credit, and would have had no difficulty in procuring small credits to the amount of these debts without the aid of any supposed interest or ownership of the Enfield property. The evidence of Mr. Gleason, the only practising lawyer within a circuit of eighteen or twenty miles, shows that his payments never had to be hastened by legal coercion. He appears to have been a careful and reasonably prompt and efficient business man, whose debts, but for his untimely death, would have been paid.

I think, therefore, that this part of the defence is not made out, and that there ought to be a decree such as will effectually restore the plaintiff to her rights.

LADD and SMITH, JJ., concurred.

*Decree accordingly.*