NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-260

CHELLISE L. SEXTON & another[1]

vs.

WELLFLEET HOUSING AUTHORITY & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs Chellise L. Sexton and Kevin M. Sexton filed this action in Land Court to establish their record title to a parcel located at 324 Old Kings Highway in Wellfleet (locus) and thus to obtain a writ of entry.  After trial, in a meticulously detailed decision, a judge ruled that the deed under which the Sextons claim title does not describe the locus with sufficient particularity to constitute a valid conveyance.  He thus concluded that the Sextons do not have record title, and that

---

[1] Kevin M. Sexton.

[2] Town of Wellfleet, Lower Cape Cod Community Development Corporation, Commonwealth of Massachusetts, Barnstable County, United States of America, Verizon New England, Inc., and NStar Electric Company, formerly known as Commonwealth Electric Company; Wendy Drobnyk and Stephen Soumerai, interveners.

the interveners, see note 2 supra, have a valid easement over the locus through a chain of title that does not include the Sextons.  On the Sextons' appeal, we affirm the judgment.

Background.  We summarize the most pertinent findings of fact, none of which is claimed to be clearly erroneous.

The Sextons base their claim of title on a 1922 deed from Laura M. Lamson to Edwin P. Cook.  The competing claim of the Wellfleet Housing Authority (WHA) depends on the 1922 deed's having been insufficient to convey title to Cook, which, if true, would mean the locus passed by intestacy to Lamson's daughter and then, through a series of conveyances and takings, to the WHA.  The WHA in turn conveyed an easement over the locus to the predecessors in title of the interveners, who use the easement for access to their nearby registered land.

The 1922 deed from Lamson to Cook, under which the Sextons claim title, describes a property bounded on the west by King's Road (now known as Old King's Highway) and on the east by Covell's Way.  For the northern and southern bounds, however, the deed uses "abutter calls" to property owned by Edwin P. Cook.[3]  The question at trial was whether this deed sufficiently describes the locus to which the Sextons claim title.

_____

[3] The judge explained that an abutter call is a reference to an abutting property.  Here, the northern abutter call actually referred to "property owned by Edwin P. Cook and parties unknown."  The judge did not find, and no party contends, that

2

After trial, the judge found that, at the time of the deed, none of Cook's properties abutted the locus. The actual abutters were Sally Newcomb or her heirs to the north and the heirs of Cornelius Hamblin to the south. Although Cook owned properties well to the north and the south of the locus, they did not abut the locus itself. In other words, the judge found, the abutter calls do not describe bounds to the locus. Rather, the judge concluded, "the deed describes some other property, not the locus, and could not be a source of title for the Sextons."

More specifically, as to the 1922 deed's northern abutter call, the judge found that at the time of the deed, the closest land owned by Cook to the north of the locus was a parcel approximately 425 feet away, separated from the locus by at least four other parcels.[4] The judge did "not credit the testimony that [Cook's northern property], removed by at least four parcels from the locus, served to form the northern abutter call in the 1922 [d]eed." As to the 1922 deed's southern

the phrase "and parties unknown" adds anything to the requisite certainty of the property description in the 1922 deed, and thus we do not discuss it further. We note that Lamson traced her title to an 1829 deed that did not rely on abutter calls for its northern and southern boundaries, relying instead on lines described by monuments, distances, and courses.

[4] Cook's parcel in turn was comprised of smaller lots previously known, in order from south to north, as the Chipman, Freeman, Hamblen, and Nicholson lots.

abutter call, the judge found that, at the time of the deed, the closest land that might have been owned by Cook to the south of the locus was a parcel previously known as the Alfred Smith lot, separated from the locus by one parcel.[5]

The 1922 deed's description -- an area bounded by Old King's Highway on the west, Covell's Way on the east, and lands of Cook to the north and south -- thus encompassed a large area comprised of six parcels:  the locus, four parcels to its north, and one parcel to its south.  But the 1922 deed's description also fit "with certainty" a parcel, known as the Freeman lot, to the north of the locus and of the six-parcel area just described.  See note 5, supra.  The judge did not find with certainty that the Freeman lot was the parcel conveyed -- a John W. Freeman had already conveyed title to that lot to Cook in 1884 -- only that the fit between the 1922 deed and that lot "serve[d] to demonstrate the patent ambiguities in the description provided in the 1922 [d]eed."

The judge, having found that the 1922 deed did not adequately describe the locus, concluded that the Sextons could not show the superior record title necessary to obtain a writ of entry.  It followed that the Sextons lacked standing to

_____

[5] There was some question, which the judge found unnecessary to resolve, whether Cook had conveyed the Alfred Smith lot to his (Cook's) son in 1905.

4

challenge the validity of the interveners' easement over the locus and did not prove its invalidity, as was their burden. Judgment entered accordingly, and the Sextons appealed.

Discussion. "In order to make a valid conveyance of land, it is essential that the land itself, the subject of the conveyance, be capable of identification, and, if the conveyance does not describe the land with such particularity as to render this possible, the conveyance is absolutely nugatory." McHale v. Treworgy, 325 Mass. 381, 385 (1950), quoting Tiffany, Real Property § 990 (3d ed. 1939). In McHale, supra at 385, a deed conveying 19,340 square feet of land in a certain lot, without specifying where on that lot the land at issue lay, "described no land at all and therefore conveyed no land."

Here, the 1922 deed does not describe the locus. The stated boundaries could be taken to describe a larger, six-parcel area that includes the locus. But the stated boundaries also describe with certainty the Freeman lot, which lies to the north of the six-parcel area. The Sextons make three essential arguments as to why this ambiguity should not be fatal.[6]

---

[6] The judge noted that the location on the ground today of property described in deeds a century or more old "presents a question of fact." Bernier v. Fredette, 85 Mass. App. Ct. 265, 268 (2014). See also McHale, 325 Mass. at 384 (for purposes of tax title statute, "whether an error in the description of land is [']substantial or misleading['] is commonly a question of fact"). We nevertheless assume in the Sextons' favor, without deciding, that whether a description in a deed is sufficient to

5

1. _Overinclusivity_. The Sextons concede that the 1922 deed "describes more land than was owned by [Lamson], creating, on its face, uncertainty as to what [Lamson] intended to convey." They contend, however, that "[i]t is long established in the Commonwealth [that] where the boundaries described in a deed enclose both property owned by the grantor and property not owned by the grantor, the deed is effective to convey the property owned by the grantor included within the larger boundary description." In short, they assert, "[i]n overinclusive deeds, the deed conveys what the grantor owns."

This proposition might help the Sextons if the 1922 deed's description of boundaries were otherwise unambiguous, i.e., described only one area of land, and the problem was merely that Lamson owned only some subset of that area. But the 1922 deed is ambiguous. And neither of the Massachusetts cases the Sextons rely on involved an ambiguous boundary description.

The first of these cases, _Powell_ v. _Clark_, 5 Mass. 355, 357 (1809), holds only that where a deed describes land both by its boundaries and by its quantity and the two descriptions conflict, the description by boundaries controls. The deed conveys the grantor's interest in the land within the stated

_____

render the subject land "capable of identification" (citation omitted), _id._ at 385, is a question of law, reviewed de novo.

6

boundaries, not any larger (or smaller) quantity of land stated in the deed.[7]  Id.

The second case, Atkins v. Bean, 14 Mass. 404 (1817), similarly misses the mark.  In Atkins, supra at 407-408, there was no ambiguity in the description of the land, only an error in describing the precise extent of a debtor's undivided interest in it.  Thus, where a judgment creditor purported to levy an execution on the debtor's one-seventh interest in the land but the debtor owned only some lesser interest, the levy was held good for what the debtor actually owned.[8]  Id. at 407.

The Sextons also cite numerous treatises and cases from other jurisdictions for the proposition that where a deed describes and purports to convey both land owned by the grantor and land not owned by the grantor, the deed validly conveys what the grantor owns.  We have carefully examined those authorities, however, and none of them discusses deeds like the 1922 deed at issue here, in which a description of a property's boundaries is not merely overinclusive but also ambiguous.

---

[7] This reflects the hierarchy of priorities governing deed interpretation.  "Descriptions that refer to monuments control over those that use courses and distances; descriptions that refer to courses and distances control over those that use area; and descriptions by area seldom are a controlling factor." Paull v. Kelly, 62 Mass. App. Ct. 673, 680 (2004).

[8] Atkins, supra is not entirely clear whether the debtor owned a one-eighth interest or a nine sixty-fourths interest. The point is immaterial for present purposes.

2.  Reference to land grantor owns.  The Sextons next argue that "[a]n imprecise description of land to be conveyed does not render a deed ineffective if reference to the land actually owned by the grantor clears up any uncertainty."  As with their first argument, however, the cases they cite for this proposition do not involve ambiguous boundary descriptions of the type at issue here.  In Hurley v. Brown, 98 Mass. 545, 546 (1868), a buyer sought specific performance of a contract to convey "a house and lot of land situated on Amity Street, Lynn, Mass."  The seller asserted that the description "would be satisfied by . . . any house and lot on that street" and was therefore too vague.  Id.  But, because the seller owned only one such house and lot, the court held the agreement enforceable:

> "We think that the presumption is strong that a description which actually corresponds with an estate owned by the contracting party is intended to apply to that particular estate, although couched in such general terms as to agree equally well with another estate which he does not own.
>
> . . .
>
> "If the party who enters into the agreement in fact owns a parcel answering to the description, and only one such, that must be regarded as the one to which the description refers."  (Emphasis added.)

Id. at 547.

But unlike in Hurley, 98 Mass. at 547, here the 1922 deed did not contain "a description which actually corresponds with

8

an estate owned by" the grantor, Lamson.  Lamson did not "in fact own[] a parcel answering to the description, and only one such."  Id.  Here, the description corresponded both to a six-parcel area, within which Lamson owned only one parcel, and to the Freeman lot, which Lamson did not own in 1922.

To similar effect as Hurley, 98 Mass. at 547, and no more helpful to the Sextons, is Danforth v. Chandler, 237 Mass. 518 (1921).  There, where the seller owned no other land in Pembroke, an agreement to convey a forty-acre farm in Pembroke was held enforceable.  Id. at 521.  The court repeated what it had said in Hurley, that "[i]f the party who enters into the agreement in fact owns a parcel answering to the description, and only one such, that must be regarded as the one to which the description refers."  Id., quoting Hurley, supra.  Again, the principle applies where the seller in fact owns one and only one parcel answering to the description, which is not true of Lamson and the 1922 deed here.  Thus, contrary to the Sextons' argument, this case is not "like Hurley and Danforth."

Danforth, 237 Mass. at 522, further states that "[w]hile the terms of the memorandum cannot be contradicted or varied, parol evidence is admissible to show what real property the [grantor] had, and to apply the contract to it."  Applying this same principle to the 1922 deed, Lamson's ownership of the locus is undisputed, but that does not change the fact that the

9

description in the deed does not correspond to the locus. To interpret that description as applying to the locus would impermissibly contradict the abutter calls to parcels some distance away, or vary them by substituting calls to the actual abutters as of 1922.

3. General principles. The Sextons finally rely on general principles of deed interpretation to argue that the ambiguous deed should be interpreted in their favor. "The basic principle governing the interpretation of deeds is that their meaning, derived from the presumed intent of the grantor, is to be ascertained from the words used in the written instrument, construed when necessary in the light of the attendant circumstances" (citation omitted). Patterson v. Paul, 448 Mass. 658, 665 (2007). We may assume that Lamson intended to convey something to Cook -- although the judge found that he could not ascertain what she intended to convey -- and that her ownership of the locus was one of the attendant circumstances. "And if the words used will permit, and if no positive rule of law prevents, a construction which will accomplish a reasonable object should be preferred to one which will render the whole attempt void." Brackett v. Pitcher, 296 Mass. 295, 297 (1936).

But we are not persuaded that those general principles suffice to overcome the ambiguity here. No doubt the court in McHale considered them, yet the court nevertheless ruled that a

10

deed conveying 19,340 square feet of land in a certain lot, without specifying where on that lot the land at issue lay, was insufficient. McHale, 325 Mass. at 385. The McHale court also relied on Conners v. Lowell, 209 Mass. 111, 122 (1911), in which descriptions were held insufficient as follows:

> "[I]n each [deed] the land was described only by its area in square feet, more or less, the street and side thereof on which it was located, and the number of the lot without reference to any plan. In fact, there was a private plan on record at the registry of deeds and a plan at the office of the city engineer, on which the several lots could be sufficiently identified. This description was insufficient. . . . [T]he names of no abutting owners were given, nor was there anything to show the shape of the parcel. The designation of it by a lot number without naming the plan or showing where it might be found or giving any other descriptive circumstance was too indefinite."

McHale, supra, quoting Connors, supra.

The Sextons also cite the principle that a deed is construed against the grantor, and "[i]f, therefore, there be two descriptions of the land conveyed, which do not coincide, the grantee is entitled to hold by that which will be most beneficial to him" (citation omitted). Bernard v. Nantucket Boys' Club, Inc., 391 Mass. 823, 827 (1984). But the 1922 deed does not contain two descriptions. It contains one ambiguous description, and each proposed resolution of that ambiguity is problematic.

Because we agree with the judge that the 1922 deed does not describe the land with such particularity as to make it capable

11

of identification, see McHale, 325 Mass. at 385, we need not address the Sextons' challenge to the judge's further reliance on post 1922 actions by interested persons who were not parties to the deed.  And, because the Sextons make no argument that they still have a viable challenge to the interveners' easement even if the 1922 deed is invalid, we need not discuss the easement issue further.

Judgment affirmed.

By the Court (Sacks,
  Hershfang & Tan, JJ.[9]),

Clerk

Entered:  June 23, 2025.

---

[9] The panelists are listed in order of seniority.