DENNIS E. CONNERS *vs.* CITY OF LOWELL.

JOSEPH WALSH *vs.* SAME.

EDWARD F. CONNERS *vs.* SAME.

Middlesex.   January 11, 1911. — May 19, 1911.

Present: KNOWLTON, C. J., LORING, BRALEY, SHELDON, & RUGG, JJ.

*Tax*, Sale, Deed, Assessment. *Deed. Notice. Name.*

A tax deed of real estate, when not in the language of St. 1909, c. 490, Part II. § 89, number 14, in order to be valid as a suitable instrument of conveyance, must set out either in precise phrase or by fair intendment to a reasonable certainty a statement of performance of all those acts which are essential to a legal cause for selling the real estate at the time when the sale took place.

In a tax deed bearing the superscription, "Commonwealth of Massachusetts," and signed by one entitling himself "Collector of Taxes for the City of Lowell" a description of the newspaper in which the notice of the tax sale was published as the "Lowell Sun," or the "Lowell Daily Telegram," without any further assertion as to the place of publication than that it was "in the county where

said real estate lies," does not make the deed invalid, although there is no express statement in the deed of the city or town within which the real estate lies, because the city where the newspaper was published is sufficiently indicated.

A tax deed, bearing the superscription, " Commonwealth of Massachusetts," and signed by one entitling himself "Collector of Taxes for" a certain city, is invalid if the newspaper in which the notice of sale was published is described as " L'Etoile," without any further assertion as to the place of publication than that it was "in the county where said real estate lies," the deed not expressly stating where the real estate lies.

The omission in a tax deed, signed by the collector of taxes of Lowell, and containing a statement that the notice of sale was posted " in city hall, a public place in said Lowell," of a further statement that the city hall was, as is required by St. 1909, c. 490, Part II. § 41, a " convenient" place for such publication, does not invalidate the deed.

A tax deed, which omits to state that the advertisement of the sale contained, as required by St. 1909, c. 490, Part II. § 39, " the names of all owners known to the collector," is invalid.

A tax deed dated July 21, 1908, is not rendered invalid because in the narration contained therein of the terms stated in the advertisement of the tax sale it was stated that the sale would be for " non-payment" of taxes, instead of for their " discharge and payment," which are the words used in R. L. c. 13, § 87, form numbered 14.

A tax deed dated July 21, 1908, which contains a statement that the advertisement of the tax sale was for the sale of " the smallest undivided part of said estate " sufficient to discharge the lien, and that the sale was of the whole and not of any undivided part, is invalid because it is defective in the statement of a cause for the sale of the whole of the land.

The name of a person is the distinctive characterization in words by which he is known and distinguished from others.  By RUGG, J.

Certain land in a city properly was assessed in a certain year to the " heirs of W." The records of the Probate Court where the land was situated showed at the time of the assessment what the names of the " heirs of W " were.  Subsequently the land was sold for non-payment of the tax and in the tax deed the collector of taxes stated that demand for the tax was made upon " the heirs of W," without stating their names.  *Held*, that in ascertaining the name of the owners of the land, which by the statute must be stated in the advertisement for the sale, the collector was chargeable with knowledge of what might have been found upon the probate records, and therefore that the omission of such names from the deed in question rendered it invalid.

A publication of the advertisement of a tax sale required by St. 1909, c. 490, Part II. § 39, in the English language in a newspaper not printed in that language, renders the sale invalid.

A general public notice required by law in this Commonwealth to be published in a newspaper must be printed in the English language and in a newspaper printed in that language.

If a certain lot of land, which was sold at a tax sale and is not of the character described in St. 1909, c. 490, Part II. § 50, is described in the deed of the tax collector as being the whole or a part of a lot of a certain number, with the name of the street and the side of the street upon which it is located and the names of all abutting owners with the general points of compass on which the land of the abutting owners lies, but without further designation by metes and bounds and without reference to any plan upon which the lot as numbered may be found, the description is sufficient.

While the description of certain land in an advertisement of a sale of the land for nonpayment of taxes must be such as to enable both owner and bidder to locate the land with substantial certainty, it need not be so detailed as to point out visually the precise boundaries of the land so that an utter stranger, unacquainted with the locality and ignorant of the neighbors, could find it without inquiry.

A sale of land in a city for the collection of a tax assessed to a person not in possession but holding a deed thereof which is valid on its face and which was given by the collector of taxes after a sale of the land for the collection of a tax assessed in a previous year, is not invalid by reason of the fact that the holder of the first tax deed failed by inadvertence to file in the registry of deeds or with the treasurer of the city where the land was situated the statement of his residence and place of business required by R. L. c. 13, § 45, now St. 1909, c. 490, Part II. § 46.

If a certain lot of land in a city which was sold at a tax sale and is not of the character described in St. 1909, c. 490, Part II. § 50, is described in the deed of the tax collector only by its area in square feet, more or less, the street and the side thereof on which it is located and a certain lot number without reference to any plan, such description is insufficient and the deed is invalid on its face, although there is a private plan on record at the registry of deeds of the county in which the land is situated and at the office of the city engineer, on which the lot could be sufficiently identified.

The holder of a tax deed of land which is invalid on its face is not the person "appearing of record" as owner, to whom an assessment of a tax on the land should be assessed.

If a tax on certain land is assessed to the holder of a tax deed thereof which is invalid on its face, such assessment is invalid, and a sale of the land for the collection of a tax so assessed is void.

THREE ACTIONS OF CONTRACT under the provisions of St. 1909, c. 490, Part II. § 45, to recover money paid to the collector of the defendant by the respective plaintiffs for certain property sold to them at tax sales, and conveyed to them by collector's deeds, the plaintiffs contending that for various reasons the sales and the deeds were invalid.   Writs dated June 15, 1910.

The plaintiff in the first case sought to recover twenty-one different sums which he had paid at a collector's sale on August 10, 1909, for twenty-one different parcels of land then sold to him.   The items were described in a bill of particulars under numbers 1 to 6 inclusive, 8, 9, 11, 12, 14 to 23 inclusive, and 27.

The plaintiff in the second case sought to recover five different sums described in a bill of particulars in five items, which he had paid at a collector's sale on July 21, 1908, for five different parcels of land then sold to him.

The plaintiff in the third case sought to recover eight different sums, of which four were sums that he had paid at the collector's sale on July 21, 1908, and four were sums that he

had paid at the collector's sale on August 10, 1909, for different parcels of property sold to him by the collector. The items as to the July 21, 1908, sale were described in a bill of particulars and were numbered 1, 3 to 5 inclusive. The items as to the August 10, 1909, sale were numbered 6, 7, 9, 10.

In the Superior Court the cases were submitted together to *Harris*, J:, upon an agreed statement of facts.

It appeared that the form of deed described in the first numbered paragraph of the opinion and its subdivisions was that used by the collector in conveying all of the property sold to the plaintiffs Walsh and Edward F. Conners at the sale on July 21, 1908, comprising the transactions described in all the items of the second action and in the items numbered 1, 3 to 5 inclusive in the third action. The same form was used by the collector in conveying, after a previous tax sale, the land described in items 6, 7, 9 and 10 in the third action to the person to whom the subsequent assessments, which were the foundation of the sales described in those items, were made. All such deeds were signed, "Andrew G. Stiles, Collector of Taxes for the City of Lowell."

The form of description of the persons upon whom the collector made demands, described in the second numbered paragraph of the opinion, was used in the deeds described in items numbered 6, 16 and 17 in the first action.

The publication of the notice of sale in a newspaper printed in the French language, as stated in the third numbered paragraph of the opinion, occurred as to the sale described in item numbered 1 of the third action, and in items numbered 8, 9, 11, 12, 14 to 21, inclusive, and 23 of the first action.

The descriptions of the land sold, discussed in the fourth and fifth numbered paragraphs of the opinion, were those used to designate the land referred to in items numbered 6, 7, 9 and 10 in the third case, and items numbered 1 to 3 inclusive, 5, 6, 8, 9, 11, 12, 14 to 22 inclusive and 27 in the first case.

The assessment of land to a person not in possession but holding a tax collector's deed, valid on its face and duly recorded, who had failed to file the statement of his residence and place of business required by R. L. c. 13, § 45, referred to in the sixth numbered paragraph of the opinion, was the foundation of the sale described in items numbered 6 and 10 in the third case.

The deeds referred to in the paragraph of the opinion numbered seven were those described in items numbered 6, 7, 9 and 10 in the third action.

The judge found for the plaintiff in the first action as to items 6, 8, 9, 11, 12, 14 to 21 inclusive and 23, and for the defendant on the other items in that case, and judgment was entered accordingly. Both parties appealed.

The finding and judgment in the second case was for the plaintiff as to all the items. The defendant appealed.

In the third case the judge found for the plaintiff as to items 1, 3, to 5, inclusive, and for the defendant as to the other items, and judgment was entered accordingly. Both parties appealed.

Other facts are stated in the opinion.

The cases were submitted on briefs.

*A. S. Howard*, for the plaintiffs.

*W. W. Duncan*, for the defendant.

RUGG, J. These are actions under St. 1909, c. 490, Part II. § 45, (formerly R. L. c. 13, § 44,) to recover money paid for tax deeds which, it is claimed, by reason of error, omissions or informality in the sales, conveyed no title.

1. The form of tax deed used in several sales was that prescribed in St. 1901, c. 519. This form was in the law less than six months, having been repealed by R. L. c. 227, and supplanted by No. 14 of Schedule of Forms attached to R. L. c. 13, § 87, now St. 1909, c. 490, Part II. § 89, No. 14. The question is whether this form employed since 1902, was "suitable" under R. L. c. 13, § 87, (now St. 1909, c. 490, Part II. § 89.) The fact that the Legislature permitted its use for a brief period, and then in substance restored important recitals·which had existed in earlier statutes, does not necessarily make it a suitable form for any other time than that during which it was expressly authorized. The requirements of law as to a tax sale were the same both before and after 1901.

A tax deed in order to be valid as a suitable instrument of conveyance, when not in the language of the statute, must set out either in precise phrase or by fair intendment to a reasonable certainty a statement of performance of all these acts which are essential to the existence of a legal cause for selling at the time when the sale was made. Although the terms of a tax deed

need not show actual compliance to a technical nicety with the minute particulars of statutory requirements in making the sale itself, yet they must satisfy a reasonable mind without resort to extrinsic evidence that a valid cause of sale in fact existed. The collector of taxes has a naked power to sell real estate to pay the lien for taxes, and he must not only strictly conform to all the conditions precedent to the exercise of his power, but his deed must contain also all the recitals of substance which the statute imposes, both for the information of the purchaser and of the owner and of those claiming under each. *Charland* v. *Home for Aged Women*, 204 Mass. 563, and cases cited. *Harrington* v. *Worcester*, 6 Allen, 576. *Langdon* v. *Stewart*, 142 Mass. 576. Adherence to the somewhat strict rules which have been established as to tax deeds assumes a new importance in view of the sweeping provision of St. 1911, c. 370, to the effect that when duly recorded such a deed " shall be *prima facie* evidence of all acts essential to its validity." (Compare St. 1901, c. 197 ; R. L. c. 13, § 45 ; St. 1902, c. 423.) Several objections are made to the deeds based on their variation from said form No. 14.

(a) The newspapers in which the notices of sale were printed were described by name as the " Lowell Sun," " Lowell Daily Telegram," and " L'Etoile " without any further assertion as to the place of publication than that it was " in the county where said real estate lies." Although there is no statement in the deed of the city or town within which the real estate lies, it may fairly be inferred from the circumstance that the deed was headed " Commonwealth of Massachusetts," that the " Lowell Sun " and the " Lowell Daily Telegram " were published in Lowell in this Commonwealth. Newspapers sometimes bear as a part of their title the name of a small country town, although not published there, (*Rose* v. *Fall River Five Cents Savings Bank*, 165 Mass. 273, *Brown* v. *Wentworth*, 181 Mass. 49,) but no one reading these deeds would have any reasonable doubt as to the fact that these newspapers were published in the city of Lowell. This is not true of the newspaper called " L'Etoile." There is nothing about this name to indicate the place of its publication. Although the words of the statute reach only to " the name of the newspaper," yet in order to show the existence of a legal

cause of sale the place of its publication as required by R. L. c. 13, § 1, must appear in the deed.

(b) R. L. c. 13, § 40, (now St. 1909, c. 490, Part II. § 41,) provides that the notice of sale shall be posted " in some convenient and public place." The deeds recite such posting " in city hall, a public place in said Lowell." It is not every public place which would be " convenient " for putting up notices of tax sales. City halls as matter of common knowledge are used generally for such purposes. Halls of this character exist in all municipalities, and the statement in a tax deed, that such a place is convenient for this use, affects no right of the person assessed or of the purchaser, and can add nothing to their knowledge. Under these circumstances failure to follow the prescribed form was not fatal. A quite different case would arise if the public place described was not one commonly known to be convenient for such purposes.

(c) It was a condition precedent to the right of the tax collector to sell that the advertisement should contain " the names of all owners known to the collector." R. L. c. 13, § 38, (now St. 1909, c. 490, Part II. § 39.) Omission of those names from the advertisement would deprive the collector of any cause for making the sale. All the statutory forms save that in St. 1901, c. 519, require a statement that the advertisement contained the name of the owner of the land. Without such a statement the deed in an essential particular, not fairly inferable from other parts of the instrument, fails to show the existence of a cause for sale.

(d) The narration of the terms of the advertisement set out in the deed was that the sale would be for " non-payment " of taxes, while form No. 14 was in the words that the sale would be for the " discharge and payment " of the tax. The statement in the deed was supplemental as to cause, while that in the form indicates the purpose of the sale. It is plain from the deed that the only purpose of the sale was to satisfy the tax. In this regard no substantial error appears.

(e) R. L. c. 13, § 38, (now St. 1909, c. 490, Part II. § 39,) requires that the published notice of the sale shall " contain a substantially accurate description of the several rights, lots, or divisions of the land to be sold," while by § 41, (now St. 1909, c. 490, Part II. § 42,) the collector must sell " the smallest undivided part of the land which will satisfy the taxes and neces-

sary intervening charges, or the whole, if no person offers to take an undivided part." The deed states that the advertisement was for the sale of "the smallest undivided part of said estate" sufficient to discharge the lien. The sale was of the whole and not any undivided part. The sale could not lawfully have been made of any larger estate than had been advertised. Hence in this particular the form of deed is defective in the statement of a cause for the sale of the whole.

All sales in which this form was used were invalid. It is not necessary to determine whether these deeds were also invalid in not containing enough to warrant a fair inference as to the municipality within which the land conveyed was situated.

2. Certain lands were properly assessed to the "Heirs of George T. Woodward" and to the "Heirs of Irene E. Richardson," under R. L. c. 12, § 21, (now St. 1909, c. 490, Part I. § 21.) In these instances the records of the Probate Court for the county, in which Lowell is located, showed on the first of May of the year in which the taxes were assessed[*] who the heirs of Woodward and Richardson severally were and that one or more of the heirs of each resided in Lowell. The recitals in the deeds of this class were that demand was made upon "the heirs" of deceased. The collector was required to serve a demand for the payment of the tax upon every resident assessed, or in case of heirs of a deceased person, upon one of them, and to state in his deed "the name of the person on whom the demand . . . was made." R. L. c. 13, §§ 14, 43, (now St. 1909, c. 490, Part II. §§ 14, 44.) To say that a demand has been made upon the heirs of an intestate is not giving the name of the person upon whom the demand was made. The two sections cited impose upon the collector the duty of finding a resident heir, if there is one, making the demand upon him, and then naming him in the deed. To name a person is not the same as to describe him. The name of a person is the distinctive characterization in words by which he is known and distinguished from others. Such a designating appellation was not given by the words "heirs of" a person. Tax deeds lacking it are invalid. *Reed* v. *Crapo*, 127

[*] The collector's deeds stated that the taxes referred to were assessed for the year 1907, and that the demands for their payment above described were made on March 11, 1909.

Mass. 39. Assessors are charged with notice of what may be found upon the probate records in determining whether to make an assessment to the heirs or devisees of one deceased. *Tobin* v. *Gillespie*, 152 Mass. 219. There is no hardship in holding the tax collector to the same investigation if necessary, in ascertaining the name of an heir.

3. The advertisement of sale in several instances was printed in English in a newspaper printed in the French language. R. L. c. 13, § 1, (now St. 1909, c. 490, Part II. § 1,) provides that "Publications, as applied to any notice, advertisement or other instrument, the publication of which is required by law, shall mean the act of printing it . . . in a newspaper published in the city or town, if any, otherwise in the county, where the land . . . is situated." English is the language of this country. This conception is fundamental in the administration of all public affairs. It is an elemental truth, so axiomatic in its nature as to need no supporting authority. It is not declared in the Constitution nor enacted by statute. It is so by the universal customs of our past in Colony, Province and Commonwealth. Apart from the more obvious considerations, there are indications that the English language is that of our institutions in the requirement that no one can be a voter or eligible to office unless able to read the Constitution in English (art. 20 of the Amendments to the Constitution), nor solemnize marriage unless able to read and write in that language. R. L. c. 151, § 30. Instruction in the English language is required in all public and private schools. R. L. c. 42, § 1; c. 44, § 2. It is plain that a general public notice required by law to be published in a newspaper must be printed in English in an English newspaper. The great weight of authority supports this view. *Auditor General* v. *Hutchinson*, 113 Mich. 245, 249. *State* v. *Chamberlain*, 99 Wis. 503. *Chicago* v. *McCoy*, 136 Ill. 344, 349. *Graham* v. *King*, 50 Mo. 22. *Road in Upper Hanover*, 44 Penn. St. 277. *Wilson* v. *Trenton*, 27 Vroom, 469. *North Baptist Church* v. *Orange*, 25 Vroom, 111. *Publishing Co.* v. *Jersey City*, 25 Vroom, 437. *John* v. *Connell*, 71 Neb. 10, 16. *Cincinnati* v. *Bickett*, 26 Ohio St. 49. There are decisions having a contrary appearance in *Richardson* v. *Tobin*, 45 Cal. 30, *Loze* v. *Mayor & Aldermen of New Orleans*, 2 La. 427, and *Kernitz* v. *Long Island City*, 50 Hun, 428. So far as they are in conflict

with the principle here stated we are not inclined to follow them. The deeds which rest upon a publication of the advertisement in a newspaper printed in French are invalid.

4. Certain lots of land not of the character indicated in St. 1909, c. 490, Part II. § 50, (formerly R. L. c. 13, § 49,) are described in the deeds by lot numbers, the street and side of street on which located, and the name of all abutting owners, with the general points of compass on which the land of abutting owners lay, but without further designation by metes and bounds, and without reference to any plan upon which the lot as numbered may be found. A sample description of this kind was "three thousand seven hundred fifty-five (3755) sq. feet of land, more or less, being lots 549–550 on the east side of Tanner Street with land now or formerly of Woonsocket Institution for Savings on the north and south, Merchants Street on the east, and Tanner Street on the west." While this description reached nearly to the line of indefiniteness, it is on the whole sufficient. It gives data enough to enable one to make a reasonable identification of the property. It indicates a parcel of specified area, rectangular shape, lying between two streets and between lots of other defined owners, presumably a portion of a large tract subdivided into smaller parts. Practically the same information is conveyed in the instances when the rear of the lots bound, not upon a street, but upon another named owner. As matter of common knowledge it is a kind of description not infrequently found in deeds, especially of land in the country. To require a greater particularity would impose upon the tax collector the necessity of an expensive survey in many cases. While the descriptions in a tax advertisement must be such as to enable both owner and bidder from its terms to locate with substantial certainty the land to be sold, it need not be so detailed as to point out visually its precise boundaries so that an utter stranger unacquainted with the locality and ignorant of the neighbors could find it without inquiry. Applying the rule laid down in *Williams* v. *Bowers*, 197 Mass. 565, 567, and the numerous cases there cited, and bearing in mind that one executing only a statutory power in the sale of land must be held to some strictness, the conclusion follows that there is no invalidity in the deeds of this class.

5. The same rule governs the deeds, where the description is similar in all respects to those last discussed, except that the land is said to be a " part of lots" whose numbers are given. Lot numbers without reference to any plan upon which they may be found plotted are of no further assistance in either case than to convey the information that the parcel described is a subdivision of a larger tract. The sufficiency of the description rests on its other elements.

6. An assessment of land was made to a person not in possession but holding a tax collector's deed thereof, valid on its face and duly recorded, who had failed by inadvertence to file in the registry of deeds or with the city treasurer the statement of his residence and place of business required by R. L. c. 13, § 45, (now St. 1909, c. 490, Part II. § 46.) This section is chiefly for the benefit of the owner in furnishing him information as to where to find the person to whom he may make tender for purpose of redeeming. He has, however, the alternative or cumulative right to make payment to the tax collector. St. 1902, c. 443, (now St. 1909, c. 490, Part II. §§ 61, 62.) It is not necessary to decide what effect, upon the rights and obligations between themselves of one entitled to redeem and one holding a tax title, the failure of the latter to comply with said § 45 may have. The tax law contains no provision that omission to record such certificate shall render the sale invalid, as it does respecting the time within which the deed shall be recorded. R. L. c. 13, § 43, (now, with subsequent amendments, St. 1909, c. 490, Part II. § 44.) The thing required by said § 45 can be done only subsequent to the record of the tax deed. Its substance does not relate to any matter inherently affecting the title, but solely to facilitating the ease of redemption. As a general rule assessors in levying subsequent assessments and the tax collector in selling thereunder may treat the holder of a duly recorded tax deed valid on its face as the record owner. *Rogers* v. *Lynn,* 200 Mass. 354. *Solis* v. *Williams,* 205 Mass. 350, 353. The purposes of the requirements of said § 45 do not appear to include an obligation upon the assessors to make a further examination of the record, beyond finding a duly recorded valid looking tax deed, to ascertain whether the holder has recorded also the necessary certificate and to determine at their peril the sufficiency of its

form and whether it has been recorded within a reasonable time. Whatever may be other effects of the failure of the purchaser to record such certificate, the tax deed is not so affected thereby as to furnish no basis for subsequent assessments. See *McNeil* v. *O'Brien*, 204 Mass. 594, 597. The deeds questioned upon that ground are sufficient in that regard.

7. Certain deeds now challenged were made on sales of real estate not within the terms of R. L. c. 13, § 49, (now St. 1909, c. 490, Part II. § 50,) assessed to persons as owners whose title was under tax deeds, in each of which the land was described only by its area in square feet, more or less, the street and side thereof on which it was located, and the number of the lot without reference to any plan. In fact, there was a private plan on record at the registry of deeds and a plan at the office of the city engineer, on which the several lots could be sufficiently identified. This description was insufficient. It differs from those discussed under paragraphs 4 and 5 of this opinion, in that the names of no abutting owners were given, nor was there anything to show the shape of the parcel. The designation of it by a lot number without naming the plan or showing where it might be found or giving any other descriptive circumstance was too indefinite. The tax deed was also in the form held insufficient in an earlier part of this opinion. These deeds were therefore invalid on their face and on inspection show that they convey no title. The question is whether one holding under such a deed invalid on its face "is a person appearing of record as owner" within the meaning of those words in R. L. c. 12, § 15. (See St. 1909, c. 490, Part I. § 15.) The rule established by *Butler* v. *Stark*, 139 Mass. 19, that the holder of a tax deed was such a record owner has been applied in *Roberts* v. *Welsh*, 192 Mass. 278, and *Welsh* v. *Briggs*, 204 Mass. 540, 552, to cases where the tax deeds, good on their face, were invalid by reason of some error in the original assessment or otherwise, not apparent upon an examination of the deed itself. But the rule has never been extended to a case where the tax deed showed on its face that it conveyed no title. A tax deed stands or falls on its own unaided merits. It must be delivered and recorded within thirty days from the sale. Its worth is to be determined as of that date. It cannot be supplemented or changed by subsequent

instruments. Its errors and inaccuracies cannot be corrected, nor can its defects be supplied from any source. When by its terms it is obvious that it does not convey a title, it fails utterly to affect the rights of the original owner. He remains the only person "appearing of record as owner" of the property. It follows that assessments based upon a tax deed which is invalid on its face is not an assessment to an owner of record. Sales founded upon such an assessment are void.

These determinations dispose of all the deeds in question and it is not necessary to discuss the other points argued.

The result is that the judgments entered in the Superior Court in the actions in which Dennis E. Conners and Joseph Walsh are the plaintiffs are affirmed. The judgment in the action, in which Edward F. Conners is the plaintiff, is reversed.

*So ordered.*