WINIFRED B. HILDE *vs.* GEORGE W. DIXON & others.[1]  September 1,
1983.  *Taxation,* Real estate tax: tax taking, tax title, low value land.
*Notice.  Practice, Civil,* Costs, Counsel fees.

We have here another instance of prospecting among old tax titles for
nuggets in the form of procedural flaws.  See *Devine* v. *Nantucket, ante*
548 (1983).

On August 30, 1935, the collector of taxes of Kingston made a tax taking of
five lots which had belonged to Marks F. Braunecker.  Rather than foreclos-
ing the tax titles, the town applied to the Commissioner of Corporations and
Taxation under the "lands of low value" procedure contained in G. L. c. 60,
§§ 79 and 80, as amended by St. 1935, c. 173, § 1 and 2, respectively.  Those
proceedings culminated on April 20, 1939, in the grant of a deed of the prop-
erty to Kingston by the treasurer of the town.  The town, in turn, conveyed
the property to John G. Dixon, Jr., on February 27, 1956.  The individual
defendants are Dixon's heirs.  The plaintiff is the heir of Braunecker.

Braunecker, who had originally owned the locus, died October 27,
1932.  The unpaid taxes for which the property was taken were those
assessed as of April 1, 1933 (the assessment date until the enactment of St.
1933, c. 254, § 29), and the assessment was to Marks F. Braunecker, who
was then dead.  Tax bills had been sent to his home in Plymouth, and they
were not returned.  A demand for the taxes (in accordance with G. L.
c. 60, § 16) mailed October 2, 1934, was similarly addressed to Marks F.
Braunecker at his home in Plymouth.  The fault upon which the plaintiff
seizes to attack the tax title was the assessment and demand upon
Braunecker after he was dead and his death had become a matter of
record.  Under G. L. c. 59, § 11, as then in effect, taxes were to be as-
sessed "to the person who is either the owner or in possession thereof on
April[2] first, and the person appearing of record, . . . as owner on April
first, even though deceased, shall be held to be the true owner . . . ."  As-
sessment of the "person appearing of record" required resort to the records
in the appropriate registry of deeds and registry of probate.  *Tobin* v.
*Gillespie,* 152 Mass. 219, 221 (1890).  *Conners* v. *Lowell,* 209 Mass. 111,
119 (1911).  *Hardy* v. *Jaeckle,* 371 Mass. 573, 579-580 (1976).  In this case
a search of probate records would have disclosed the fact of the death of
Braunecker and the appointment of his son, William T., as administrator
of his estate.  The collector of taxes in making demand for payment is
similarly charged with notice of probate records.  *Conners* v. *Lowell,* 209
Mass. at 119.  *Fuller* v. *Fuller,* 228 Mass. 441, 444 (1917).

---

[1] Charles F. Dixon, Marion T. Lundfelt, Robert E. Dixon, Eugene Dixon,
Helen Conners, Clair Boyce and the town of Kingston.

[2] By St. 1933, c. 254, § 29, this was changed to January.

"No tax title," however, "and no item included in a tax account, shall be held to be invalid by reason of any error or irregularity which is neither substantial nor misleading, whether such error or irregularity occurs in the proceedings of the collector or the assessors . . . ." G. L. c. 60, § 37, as amended by St. 1976, c. 322. Whether an error in this context is substantial or misleading is a question of fact and depends on the circumstances of each case. *Fall River* v. *Conanicut Mills*, 294 Mass. 98, 100 (1936). *Lowell* v. *Boland*, 327 Mass. 300, 302 (1951). The Land Court judge found that the tax bills reached Marks's daughter Mary, the agent for his estate, who lived in her father's house. His findings had support in the evidence and we do not disturb them. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). See *Norton* v. *West*, 8 Mass. App. Ct. 348, 350 (1979). The judge's finding that the "tax bills . . . got to the true owners, the heirs," warranted his conclusory finding that neither the error of the assessors nor that of the collector of taxes was "substantial" or "misleading." Cases holding an error insubstantial and not misleading include: *Lynn* v. *Lynn Commercial Realty Co.*, 286 Mass. 368, 369-370 (1934) (demand addressed to Charles R. Adams, Treasurer c/o Lynn Commercial Realty Co., rather than to the corporation); *Fall River* v. *Conanicut Mills*, 294 Mass. at 99-100 (sale adjourned to a time later than seven days of time specified in notice); *Boston* v. *Boston Port Dev. Co.*, 308 Mass. 72, 74-75 (1941) (demand letter irregularly addressed but found to have been received); *Springfield* v. *Schaffer*, 12 Mass. App. Ct. 277, 280 (1981) (tax bill sent to an officer and principal stockholder of corporation rather than to the corporation).

The facts in the instant case are altogether different from those in *Bartevian* v. *Cullen*, 369 Mass. 819, 821, 824-825 (1976), in which the tax bill was sent simply to "Vera M. Bartevian, Plymouth, Mass.," a town in which she had never lived or even spent a night, resulting in no bill or demand ever reaching the taxpayer, whose mailing address was easily available to the authorities. *Pass* v. *Seekonk*, 4 Mass. App. Ct. 447 (1976), upon which the plaintiff relies heavily, is equally distinguishable. In that case the town failed to introduce evidence as to where the collector of taxes mailed his demand, or to whom. There was evidence of a diligent administrator "aware of the assets of the estate and alert to protect them." *Id.* at 451. The failure to serve the demand on him could, from the facts, be found to be a substantial error. In the instant case, by contrast, there was evidence that the administrator, and certainly his agent, were aware of the tax bills and demand; that for the years 1934 and 1935, i.e., prior to the culmination of divestiture of the Braunecker title, bills had been addressed and mailed to the heirs of Braunecker, i.e., correctly; that the estate faced cash claims; and that the administrator had reason to abandon land he thought to be of marginal value.

Notwithstanding the opinion of the United States Supreme Court in *Mennonite Bd. of Missions* v. *Adams*, 462 U.S. 791 (1983), decided after

the case at bar was argued, we think the views expressed in *Guaranty Mortgage Corp.* v. *Burlington,* 385 Mass. 411, 418-420 (1982), about the constitutionality of the low value land procedure authorized by G. L. c. 60, §§ 79 & 80, continue to be controlling. Precisely because it does deal with low value land, the process is distinguishable from the Indiana procedures considered in *Mennonite Bd. of Missions.* Moreover, our procedures avoid the failure of notice pitfall of the Indiana statute in that the taxpayer first receives a demand for unpaid taxes, G. L. c. 60, § 16, and a mortgagee may arrange to have demands for unpaid taxes served on him. G. L. c. 60, § 38. In any event, no question arises that §§ 79 & 80 are unconstitutional as applied in this case because the estate of Marks F. Braunecker had actual notice of demand for past due taxes.

*Judgment affirmed.*

*John H. Wyman* for the plaintiff.
*Edward J. Richardson* for the defendants.